THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE:                                          )
                                                )
LINDSAY JENKINS,                                )
                                                )
      Debtor-Appellant.                         )
------------------------------------------------)   Case Nos. 16 C 11685
                                                )   and 17 C 1120
LINDSAY JENKINS,                                )
                                                )
      Appellant,                                )
                                                )
v.                                              )
                                                )
SELECT PORTFOLIO SERVICING, INC.                )
AS AGENT FOR U.S. BANK, N.A., et al.,           )
                                                )
      Appellees.                                )
                                                )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

      By October 2016, when she filed a bankruptcy petition under Chapter 11, Lindsay Jenkins had been in default on two mortgages for years. The Bankruptcy Code provides that, upon filing a petition, all proceedings to collect from the debtor are automatically stayed. 11 U.S.C. § 362(a). Two entities—Elizon Master Participation Trust I, U.S. Bank Trust National Association, as Owner-Trustee (Elizon), and Select Portfolio Servicing, Inc. as servicing agent for U.S. Bank NA, successor trustee to Bank of America, NA, successor to LaSalle Bank NA, as trustee, for the WaMu Mortgage Pass-Through Certificates, Series 2006-AR2 (SPS)—each of which serviced one of the mortgages, separately moved to lift the automatic stay so they could proceed with foreclosure. The bankruptcy court granted both motions. The U.S. Trustee—the

Department of Justice administrator who oversees bankruptcy cases in the Northern District of Illinois—then moved to dismiss Jenkins's bankruptcy case. The bankruptcy court granted the motion. Jenkins has appealed these decisions and alleges she has experienced additional wrongs at the hands of the judge, court staff, and other parties.

## Background[1]

Jenkins owns one property in Illinois, which is not at issue in this appeal, and two in New York. Both of the New York properties are at issue; one is a rental property that provides Jenkins with her sole source of income. Jenkins, with assistance from counsel, filed a petition for bankruptcy under Chapter 11 on October 27, 2016. The filing of a bankruptcy petition automatically stays any action to recover from the debtor. 11 U.S.C. § 362(a). At the time she filed the petition, Jenkins had been in default for 74 months and owed $472,145.16 in outstanding loan payments on the first property. On the second property, Jenkins had been in default for 81 months and owed $213,389. In her bankruptcy petition, Jenkins stated that she had monthly expenses of $5,920 and income of $6,440, for a net monthly income of $520.

Elizon and SPS moved to modify the automatic stay. The bankruptcy court granted both motions. Jenkins filed a notice of appeal on December 28, 2016, which became Case No. 16 C 11685 in this court.

The U.S. Trustee moved to dismiss Jenkins's bankruptcy petition on December 28, 2016, arguing that she had failed to provide the monthly updates required by the Bankruptcy Code and that there was no likely means by which Jenkins could rehabilitate. The bankruptcy court granted this motion on February 2, 2017. Jenkins

---

[1] This case was originally assigned to another judge and was transferred to the undersigned judge's docket on October 16, 2017.

filed a notice of appeal on February 10, 2017, which became Case No. 17 C 1120 in this court. In the interim, on January 13, 2017, Jenkins's counsel Ted Smith moved to withdraw as her attorney. The bankruptcy court granted Smith's motion on January 19, 2017.

## Discussion

Jenkins has appealed two of the bankruptcy court's orders and has raised numerous other issues. The first two issues in this appeal are whether the bankruptcy court abused its discretion by granting the SPS and Elizon motions for relief from the automatic stay or dismissing Jenkins's bankruptcy petition. The final issue is whether any of Jenkins's other allegations against the judge, Trustee, and opposing party have merit.[2]

In this Opinion, the Court cites to four parts of the record, all filed as part of Case No. 16 C 11685. The first is the set of exhibits associated with docket entry 9; the second is the "Appendix," filed as docket entry 20; the third is the "Supplemental Appendix," filed as docket entry 21; and the fourth is the set of materials filed as docket entry 24. The Court cites to the first source as "Ex. 9-xx," with "xx" indicating the number of the specific exhibit; the second source as "App."; the third source as "Supp. App."; and the fourth source as "Ex. 24-xx."

**I.      Orders granting SPS and Elizon's motions to modify the automatic stay**

The bankruptcy judge granted SPS and Elizon's motions to modify the automatic stay under Section 362(d)(2). Ex. 24-9 at 12-13 (Order Modifying Stay; Order of

---

[2] The abusive tone that Jenkins employs toward the other parties in her filings in this appeal is nothing new. *See Jenkins v. Eaton*, No. 08 C 0713, 2010 WL 5071995, *1 (E.D.N.Y. Dec. 7, 2010) (imposing a filing injunction on Jenkins for her "extensive history of vexatious and baseless lawsuits.").

3

Correction Pursuant to Fed. R. Civ. P. 60). This Court reviews a bankruptcy court's determination of whether there is cause to modify the automatic stay for abuse of discretion. *Matter of Williams*, 144 F.3d 544, 546 (7th Cir. 1998).

After a bankruptcy petition is filed, the debtor is entitled to an automatic stay of any proceedings in which creditors seek to recover from the debtor. 11 U.S.C. § 362(a). A creditor may obtain relief through modification of the stay if it can demonstrate "cause," which includes "the lack of adequate protection" of the creditor's interest. *Id.* § 362(d)(1). There is no "exact science" to determining whether a creditor's interest is adequately protected, but factors include the level of unpaid debt, the debtor's ability to repay, and the hardships to each party. *See, e.g., In re Spencer*, 541 B.R. 208, 214 (W.D. Wis. 2015) (citation omitted) (holding that the interest of a mortgagee was inadequately protected, as the debtor had accrued over $30,000 in unpaid tax and insurance payments, failed to pay the mortgage since 2008, and continued to burden the creditor with litigation costs).

The bankruptcy court did not abuse its discretion by modifying the automatic stay for SPS after finding that Jenkins lacked adequate protection. SPS sought to proceed on foreclosure proceedings against Jenkins. Ex. 24-8 at 49-53 (Motion to Modify the Automatic Stay and Required Attachment). Jenkins had been in default for 81 months and owed in excess of $200,000. *Id.* at 53. With a self-reported net monthly income of $520, it would have taken Jenkins over 30 years to catch up on the deficiency if every bit of that money went toward this particular loan.

Although Elizon moved to modify the stay on a different basis, Ex. 24-6 at 74-76 (Motion for Relief from Automatic Stay), the Court also holds that the bankruptcy court

4

did not abuse its discretion by modifying the stay for Elizon. Jenkins could not show that she would adequately protect Elizon's interest in the property, given the period it would require for her to cure the deficiency. "We may affirm the bankruptcy court's decision on an alternative ground, but that ground must have been adequately presented in the bankruptcy court." *Capital Factors, Inc. v. Kmart Corp.*, 291 B.R. 818, 824 (N.D. Ill. 2003) (citing *Anderson U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 478 (7th Cir. 2001)). Jenkins had been in default for 74 months and owed approximately $470,000. *Id.* at 77. With the $520 monthly net income Jenkins reported to the bankruptcy court, it would take her approximately 75 years to cure the deficiency if all of that were allocated to this debt.

## II. Order dismissing Jenkins's case

The bankruptcy judge granted the Trustee's motion to dismiss Jenkins's case under 11 U.S.C. 1112(b). Ex. 24-29 at 1 (Order Dismissing Chapter 11 Case and Shortening Notice). The Court reviews the bankruptcy court's dismissal of a debtor's petition for abuse of discretion. *In re Hall*, 304 F.3d 743, 746 (7th Cir. 2002). The bankruptcy court abuses its discretion if it "act[s] contrary to the law or reache[s] an unreasonable result." *In re Sokolik*, 635 F.3d 261, 269 (7th Cir. 2011) (citation omitted).

The bankruptcy court did not abuse its discretion by dismissing Jenkins's petition, as Jenkins had failed to file any of the monthly operating reports and had not shown a reasonable likelihood of rehabilitating her estate.

First, Jenkins failed to timely file the monthly operating reports required in Chapter 11 cases. A bankruptcy court may dismiss a case for the "unexcused failure to satisfy timely any filing or reporting requirement." 11 U.S.C. § 1112(b)(4)(F). Jenkins

5

concedes that she failed to file the operating reports in a timely manner. Reply to Trustee's Br. at 5. Indeed, Jenkins does not contend that she ever filed so much as a single operating report during the pendency of her bankruptcy case. This is a sufficient basis to affirm the bankruptcy court's dismissal.

There is also a separate basis to affirm the dismissal of Jenkins's petition. It was abundantly clear that there was no reasonable likelihood of rehabilitation of Jenkins's estate. A bankruptcy court may dismiss a petition in which the estate is experiencing "continuing loss" and there is no "reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). As the Trustee noted, once the creditors were permitted to foreclose upon Jenkins's rent-generating property, she lacked any source of income with which to make payments on her mortgages. App. at 51-52 (transcript of Feb. 2, 2017 proceedings). Thus, at the time of dismissal, Jenkins was slipping further behind on her mortgages, even as she already faced a steep uphill climb to meet her obligations. On one property, Jenkins had been in default for 74 months and owed $472,145.16 in outstanding payments. Ex. 24-6 at 77. On the other, Jenkins had been in default for 81 months and owed $213,389. Ex. 24-8 at 53. Even if she had been able to continue collecting rental payments, she could only devote a monthly net income of $520 to rehabilitation. Ex. 24-6 at 43. The bankruptcy court did not abuse its discretion by dismissing Jenkins's case, as her estate was experiencing continuing loss and there was no reasonable likelihood of rehabilitation.

The Court affirms the dismissal of Jenkins's case.

### III. Other arguments

Finally, the Court reviews the kaleidoscopic accusations of bias, error, and bad

faith Jenkins has made against the bankruptcy judge, court staff, and other parties. None of these allegations have any merit.

First, Jenkins contends that the judge and court employees "disappeared" her filings. Initial Br. at 18. To the contrary, the record suggests it was not a conspiracy of judicial officers that kept her submissions from being filed, but Jenkins's noncompliance with filing rules. For instance, Jenkins states that in her submissions to the bankruptcy court, she would include a copy of her filings for the U.S. Trustee. *Id.* at 9. The rules of the bankruptcy court, however, do not permit serving a motion upon the opposing party by including an extra copy of the motion with the material submitted to the bankruptcy court clerk for filing. Bankr. L.R. 9013-1(D). And, "[i]f a motion fails to comply with the provisions of this Rule in any respect, the court may, in its discretion, deny the motion." *Id.* (G). This is just one example; the record suggests that Jenkins generally failed to comply with filing rules. *See* App. at 56 (Transcript of Feb. 16, 2017 Proceedings) (Judge Hollis: "[A]s I have explained repeatedly, I don't look at things if they're e-mailed to somebody and they're not filed with the Court . . . they're not noticed up for a hearing.").

"[P]ro se litigants are not entitled to a general dispensation from the rules of procedure or court imposed deadlines." *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994) (citation omitted). The record demonstrates that Jenkins failed to comply with the bankruptcy court's rules for filings. For this reason, the Court is also unpersuaded by Jenkin's allegation that Gretchen Silver, counsel for the U.S. Trustee, lied about what Jenkins had filed. Initial Br. at 32. It is far more likely that Silver was genuinely confused about the status of filings than she was misstating what Jenkins had filed.

7

*See* U.S. Trustee Resp. Br. at 20-21. Jenkins is not entitled to relief on either issue.

Next, Jenkins claims the bankruptcy judge deprived her of counsel by "[a]ttacking the competence of [her] lawyer" and "imposing unpublished conditions on the attorney." Initial Br. at 20. But Jenkins's attorney, Ted Smith, was not removed by the bankruptcy court—he affirmatively moved to withdraw as counsel, Ex. 9-2 at 5 (Dkt. No. 48), and the bankruptcy judge granted his motion. *Id.* at 6 (Dkt. No. 59). At the hearing on Smith's motion, a representative for Smith stated that he was withdrawing in part because of filings on Jenkins's behalf that were made without Smith's knowledge. App. at 43 (Transcript of Jan. 12, 2017 Proceedings). Jenkins is not entitled to relief on this point.

Next, Jenkins argues she was prejudiced by the bankruptcy judge's "bizarre state of mind." Initial Br. at 21. As evidence, Jenkins offers (1) the judge's discussion of filings being slipped under her door, (2) an alleged misstatement that Jenkins had not paid filing fees, and (3) an alleged assertion that Jenkins had not requested to appear via telephone at the hearing on the Trustee's motion to dismiss. *Id.* at 21-24. Upon review, none of these allegations reflects a "total denial of due process," *id.* at 24, but rather a judge working in good faith to accommodate a difficult litigant.

First, the judge very well might have been receiving filings under her door, given the already-documented errors in Jenkins's filings. Second, contrary to Jenkins's assertion, the record suggests that Jenkins did not properly pay her filing fees, at least for some period of the proceedings. *See* Supp. App. at 52 ("Notice of Deficiency"). Third, Jenkins accuses the judge of acting as though she had not requested to appear at the hearing for her motion to dismiss via telephone. The record, however, shows that

the clerk of court called Jenkins before the hearing—and Jenkins never answered. App. at 48 (Transcript of January 12, 2017 Proceedings). Jenkins is "entitled to an opportunity to be heard, not to a particular type of hearing." *In re Bartle*, 560 F.3d 724, 729 (7th Cir. 2009). The bankruptcy court's efforts to provide Jenkins with a hearing were sufficient. Nothing in the record shows that the bankruptcy judge's state of mind was in the least bit abnormal, and Jenkins is not entitled to relief based upon these allegations.

Next, Jenkins challenges SPS and Elizon's standing, though she does not pin down what exactly what she contends they lacked standing to do. Initial Br. at 24. Jenkins also contends that the bankruptcy judge's unwillingness to consider her "RESPA demand" or to review her briefing on standing was prejudicial. Jenkins's arguments here miss the mark: in determining whether to modify the automatic stay, the question is only "whether there is a colorable claim of a lien on property of the estate." *Matter of Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1234 (7th Cir. 1990) ("[A] hearing on a motion to lift the automatic stay under § 362(d) is limited in scope. Questions of the validity of liens are not generally at issue in a § 362 hearing"). Given that Jenkins listed both SPS and Elizon as creditors in her Schedule D submission, Ex. 24-6 at 32-33, her contention that they lacked standing is misplaced. Based upon Jenkins's representations alone, it was reasonable to treat SPS and Elizon as creditors with colorable claims. Jenkins is not entitled to relief on this issue.

Finally, Jenkins contends, in a two-paragraph argument devoid of legal authority, that the statute creating the office of the U.S. Trustee is unconstitutional. Reply to U.S. Trustee Br. at 2. "[P]erfunctory and undeveloped arguments, and arguments that are

9

unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991). The Court treats Jenkins's argument on this issue as waived.

## Conclusion

The Court directs the Clerk to enter judgment in each of these cases affirming the decision of the bankruptcy court.

                                                                       _____
                                                                       MATTHEW F. KENNELLY
                                                                      United States District Judge

Date: January 9, 2018